IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 19-cv-02042-PAB-MEH

DAVID MONTGOMERY, and
WILLIAM MONTGOMERY

      Plaintiffs,

v.

MARK BLILEY,
WAYNE LOLOTAI,
KEEGAN CARRICK,

      Defendants.

---

## ORDER ACCEPTING MAGISTRATE RECOMMENDATION

---

This matter is before the Court on the Recommendation of United States Magistrate Judge [Docket No. 41].  Plaintiffs filed their objections on September 2, 2020, Docket No. 42, to which defendants responded on September 16, 2020.  *See* Docket No. 43.  The Recommendation addresses Defendants' Motion for Summary Judgment [Docket No. 33].  The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I.  BACKGROUND[1]

Around 6:30 p.m. on July 14, 2017, defendant Officer Mark Bliley saw plaintiffs, who are brothers, panhandling on two different medians that divide the east and west traffic of Walnut Street at the intersection of 28th Street in Boulder, Colorado.  *See* Docket No. 33 at 2, ¶ 1.  Plaintiff David Montgomery was standing on the median on the

---

[1] The following facts are undisputed unless otherwise indicated.

west side of the intersection and plaintiff William Montgomery on the east.  *See id.* at 3,
¶ 3.  Walnut Street and 28th Street are paved roads in Boulder.  *See id.*, ¶ 4.  The
medians were located on private property and there were signs in close proximity to the
medians that "indicate[d] that the medians [p]laintiffs panhandled on were located on
private property and publicized restrictions on public use of and access to that
property."  *See* Docket No. 40 at 2-3.  Two signs, both "just to the north" of plaintiffs,
stated "Private Street: No City Maintenance," while another, located near William,
stated that the property is "Private Property" and also stated that trespassing,
solicitation, and loitering was not allowed.  *See* Docket No. 39 at 3, ¶ 3; Docket No. 39
at 2-4, ¶ 3.

Officer Bliley made contact with David and asked David to move off the median
because he could not panhandle there.  *See* Docket No. 33 at 4, ¶ 9.  David told Officer
Bliley that the median was located on a private street and so he was allowed to
panhandle.  *See id.* at 4-5, ¶ 10.  Officer Bliley ordered David to sit on the curb on the
northwestern corner of Walnut Street and 28th Street, which David did.  *Id.* at 5, ¶¶ 11-
12.  William then left the median he was standing on and approached Officer Bliley,
arguing that the medians on which they were standing were on a "private drive."  *See
id.* at 5, ¶¶ 13-14.  Officer Bliley directed William to sit on the curb next to David while
Officer Bliley explained Boulder's panhandling ordinance.  *See id.* at 5-6, ¶¶ 12, 15-18.
Plaintiffs continued to contend that they were permitted to panhandle on the medians
because the medians were located on a privately owned and maintained road.  *See id.*
at 6, ¶ 19.  Defendant Officer Waylon Lolotai and defendant Officer Keegan Carrick

arrived and "cover[ed] Officer Bliley after he detained [p]laintiffs." *Id.*, ¶ 20. Officers Carrick and Lolotai stayed with plaintiffs while Officer Bliley ran plaintiffs' identification and issued them citations for violating Boulder's anti-panhandling ordinance, Boulder Rev. Code. § 5-16-16. *See* Docket No. 33 at 6, ¶ 21. While this was happening, plaintiffs also told Officers Carrick and Lolotai that the medians were private. *See id.* at 6-7, ¶¶ 22. A video made by William, whose content is undisputed, shows that plaintiffs directed Officers Bliley, Lolotai, and Carrick to the presence of the signs. *See id.* at 3, 6-7, ¶¶ 4, 18, 22.

Plaintiffs filed this lawsuit on July 15, 2019. *See* Docket No. 1. Plaintiffs bring two claims pursuant to 42 U.S.C. § 1983, one for seizure without reasonable suspicion and the other for unlawful arrest without probable cause, both in violation of the Fourth Amendment. *See id.* at 14-16. Plaintiffs' claim for unlawful arrest was dismissed on October 16, 2019. *See* Docket No, 10.

Defendants filed a motion for summary judgment on June 15, 2020, arguing that defendants had reasonable suspicion for their investigative detention and, even if they did not, they are entitled to qualified immunity. *See* Docket No. 33. Magistrate Judge Hegarty issued his recommendation on August 18, 2010. *See* Docket No. 41. Magistrate Judge Hegarty recommends granting defendants' motion because defendants had reasonable suspicion for the investigative detention. *See* Docket No. 41 at 20. Plaintiffs filed their objections on September 2, 2020. *See* Docket No. 42.

## II.  LEGAL STANDARD

The Court must "determine de novo any part of the magistrate judge's disposition

that has been properly objected to." Fed. R. Civ. P. 72(b)(3). An objection is "proper" if it is both timely and specific. *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996). A specific objection "enables the district judge to focus attention on those issues – factual and legal – that are at the heart of the parties' dispute." *Id.*

In the absence of an objection, the district court may review a magistrate judge's recommendation under any standard it deems appropriate. *See Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991); *see also Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings."). The Court therefore reviews the non-objected to portions of the recommendation to confirm that there is "no clear error on the face of the record." Fed. R. Civ. P. 72(b), Advisory Committee Notes. This standard of review is something less than a "clearly erroneous or contrary to law" standard of review, Fed. R. Civ. P. 72(a), which in turn is less than a de novo review. Fed. R. Civ. P. 72(b). Because plaintiffs are proceeding pro se, the Court will construe their objections and pleadings liberally without serving as their advocate. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim.

4

*Wright v. Abbott Labs., Inc*., 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes over material facts can create a genuine issue for trial and preclude summary judgment.  *Faustin v. City & Cty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations omitted).  "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994).  The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted).  "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case."  *Bausman*, 252 F.3d at 1115.  When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.  *Id.*

## III.  ANALYSIS

### A.  Reasonable Suspicion Based on the Panhandling Ordinance

There are no objections to the magistrate judges's recommendation that defendants did not have reasonable suspicion to detain plaintiffs based on Boulder's panhandling ordinance.  The Court has reviewed the non-objected portions of the recommendation to satisfy itself that there is "no clear error on the face of the record." Fed. R. Civ. P. 72(b), Advisory Committee Notes.  Based on this review, the Court has concluded that this portion of the recommendation is a correct application of the facts and the law.

### B.  Reasonable Suspicion Based on the Trespass Ordinance

Magistrate Judge Hegarty recommends that the Court grant defendants' motion for summary judgment because defendants had reasonable suspicion that two people panhandling on private property were committing or were about to commit a violation of Boulder's trespass ordinance.[2]  Docket No. 41 at 18.

Boulder's trespass ordinance states, in relevant part, that "[n]o person shall . . . [e]nter or remain upon land or premises other than a dwelling of another in defiance of a legal request or order by the owner or some other authorized person."  *See* Boulder

---

[2] The Court notes that defendants did not initially raise the issue of the trespass ordinance in their motion for summary judgment.  *See generally* Docket No. 33. Instead, once plaintiffs admitted that they were "likely in violation of whatever private property policy may have existed" at the private medians, *see* Docket No. 39 at 3, defendants raised the argument in their reply.  *See* Docket No. 40.  The magistrate judge ultimately ruled on the argument.  *See* Docket No. 41 at 18.  Although it was raised in reply, plaintiffs have been given the opportunity to fully litigate and defend against this argument in their objections to the magistrate recommendation and, in fact, contend that the Court should rule on it.  *See* Docket No. 44 at 2, ¶ 3 ("[T]he Court has more than enough information to fairly rule.").

Rev. Code § 5-4-3(a).  The magistrate judge concluded that a police officer "observing two individuals 'panhandling' on a street marked 'private' would have reasonable, articulable suspicion that the individuals were committed or about to commit a violation of Boulder's trespass ordinance."  *See* Docket No. 41 at 18 (footnote omitted).  The magistrate judge reasoned that it was immaterial for Fourth Amendment purposes that Officer Bliley believed plaintiffs were violating the panhandling ordinance and that, the presence of the private signs and plaintiffs' panhandling gave Officer Bliley reasonable suspicion to stop plaintiffs.  *See id.* at 18-20.

Plaintiffs make four objections: (1) none of the defendants actually looked at the signs or knew of their contents; (2) the sign next to William is inapplicable to the sign next to David; (3) the signs by themselves do not provide reasonable suspicion of a trespass violation; and (4) plaintiffs had implied consent to be on the property.  *See generally* Docket No. 42.

### 1.  Defendants' Reading of the Signs

Plaintiffs' first objection is that there is no evidence that Officer Bliley read the signs such that he knew the "contents" of the sign to be "fairly used by him in his reasonable suspicion analysis."  *See* Docket No. 42 at 2-5.  The Court finds this argument unpersuasive.

First, plaintiffs' factual allegations in their objections that the sign was too far to be seen directly refutes the admitted facts and argument in their response to defendants' motion for summary judgment.  In disputing defendants' characterization of 28th Street and Walnut as "public," plaintiffs argue that it "is abundantly clear [that] the

entire property – including its parking lots, driveways, sidewalks, and medians" is not open to the general public.  *See* Docket No. 39 at 4.  That is, it is private.  Plaintiffs asserted in their response to the motion for summary judgment that it was undisputed that there were several signs in the area, that plaintiffs were only "several feet past" those signs, and that the signs were clearly visible.  *See id.* at 6.  As asserted by plaintiffs, defendants admitted that the posted signs were in "close proximity" to the medians and that the signs indicated that the medians on which plaintiffs were located were private property.  *See* Docket No. 40 at 3.  Plaintiffs cannot now dispute facts that they themselves asserted were undisputed.  Moreover, both plaintiffs and defendants admit that the various signs apply to the medians on which plaintiffs were standing.  Indeed, plaintiffs continually told defendants that the medians were private and directed defendants to the signs stating as much.  Docket No. 33 at 3, 6-7, ¶¶ 4, 18, 22.

Second, defendants' subjective intentions in making the investigative stop are irrelevant in the reasonable suspicion analysis.  *See United States v. Haskins*, 430 F. App'x 727, 728 (10th Cir. 2011) (unpublished) ("The officer's actual motivations or subjective intentions and beliefs are irrelevant."); *see also Whren v. United States*, 517 U.S. 806, 813 (1996) ("[T]he fact that an officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justified that action." (citation omitted)).  For example, in *Haskins*, a police officer observed that the right taillight of a car was out, so the officer pursued the vehicle and eventually caught up with the driver when the car reached a private

8

driveway.  *See* 430 F. App'x at 728.  The officer intended to issue a citation to the driver regarding an ordinance that required a taillight to be illuminated at a certain time, when in actuality the driver was not violating that ordinance.  *See id.* at 729.  The Tenth Circuit, however, reasoned that this mistake was immaterial because other ordinances required working taillights at all times.  *Id.*  Specifically, the officer's "state of mind is irrelevant.  A stop is supported by reasonable suspicion if, as here, the facts known to the officer indicate that an ordinance is being violated even if the officer mistakenly believes that another ordinance is the one being violated."  *Id.*  In other words, the facts before the officer still supported reasonable suspicion that the driver was violating the law, even if the officer was mistaken as to which law was being violated.  Thus, the issue is whether the officer was "mistaken that what he observed . . . violated [the] law."  *United States v. Eckhart*, 569 F.3d 1263, 1271 (10th Cir. 2009).  The Supreme Court has stated that "the Fourth Amendment's concern with 'reasonableness' allows certain actions to be taken in certain circumstances, *whatever* the subjective intent."  *See Whren*, 517 U.S. at 814; *see also United States v. Robinson*, 414 U.S. 218, 236 (1973) (reasoning, in the context of a search incident to arrest where the officer was not searching for evidence of the crime, that it was immaterial that the arresting officer did not have "any subjective fear of the respondent or that he did not himself suspect that respondent was armed").

Plaintiffs' objections regarding whether defendants actually read the signs is unpersuasive.  The issue is not whether defendants read the signs or what their subjective motivations were, but whether the totality of the circumstances "warrant[ed]

9

an officer of reasonable caution in believing the action taken was appropriate." *United States v. Winder*, 557 F.3d 1129, 1134 (10th Cir. 2009) (citing *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968)).  Plaintiffs direct the Court to *Terry*'s statement that the facts "available to the officer" must support reasonable suspicion.  *See* Docket No. 42 at 4, ¶ 3.  But plaintiffs take this quote out of context. *Terry* stated a hypothetical: "*would* the facts available to the officer . . . warrant a man of reasonable caution in the belief that the action taken was appropriate?"  *See* 392 U.S. at 21-22 (emphasis added).  It is not a question of whether Officer Bliley actually read the signs or what his intent was in stopping plaintiffs, but whether, at the time plaintiffs were stopped, there were sufficient facts available to justify an objectively reasonable officer in stopping plaintiffs.  *United States v. Villagrana-Flores*, 467 F.3d 1269, 1275 (10th Cir. 2006) ("[T]he actual reasons for the officer's detention . . . are of no consequence.").  Reasonable suspicion "demand[s] only that an officer have facts from which a reasonable officer could form a reasonable suspicion that criminal conduct was occurring or was about to occur."  *See Ward v. City of Hobbs*, 398 F. Supp. 3d. 991, 1054 (D.N.M. 2019) (citing *United States v. Ceballos*, 355 F. App'x 226, 229 (10th Cir. 2009) (unpublished)).  The facts available to Officer Bliley, from which a reasonable officer could develop a reasonable suspicion of criminal activity, are: (1) plaintiffs were panhandling on two separate medians: (2) a sign "just north" of William stated private property, as well as no trespassing; (3) a sign next to David stated private property; (4) plaintiffs directed each defendant to the existence of the signs; and (5) plaintiffs continually asserted that the medians were private property.  It is these facts that were "available" to Officer Bliley, and it is against

these facts that Officer Bliley's actions must be judged.[3]  *See Terry*, 392 U.S. at 21-22

("It is imperative that the facts be judged against an objective standard.").

### 2.  *Distance of Sign from David*

Plaintiffs' second objection is that the lack of a "no trespassing" sign near David

means that Officer Bliley did not have reasonable suspicion to stop David.  *See* Docket

No. 42 at 5-6.  Plaintiffs asserted that "private property" signs were obvious and only

several feet past David.  *See* Docket No. 39 at 5-6.  The issue is not whether a

particular sign specifically stated that no trespassing or solicitation was allowed, but

whether, under the totality of the circumstances, there was "some minimal level of

objective justification" for the stop.  *See Jones v. Manriquez*, 811 F. App'x 482, 486

(10th Cir. 2020) (unpublished) (citing *United States v. Albert*, 579 F.3d 1188, 1197 (10th

Cir. 2009)).  Even if the lack of a specific sign stating no trespassing is potentially

demonstrative of David's innocence, an officer is still allowed to briefly detain an

individual to resolve ambiguity regarding potentially criminal activity; indeed, resolving

---

[3] Plaintiffs do not assert that the investigative detention was outside the scope of defendants' reason for stopping plaintiff.  It is well-settled that, if an officer has reasonable suspicion to make an investigative stop, he may then investigate pursuant to that stop, so long as that investigation is not outside the "scope [of] the circumstances which justified the interference in the first place."  *See United States v. Burleson*, 657 F.3d 1040, 1045 (10th. Cir. 2011) (citing *Terry*, 392 U.S. at 20)).  While plaintiffs assert that defendants failed to conduct an investigation into the signs, Docket No. 42 at 5, ¶ 5, that is irrelevant to the reasonable suspicion that justified the stop. Plaintiffs are correct that, for a warrantless arrest and detention, which requires probable cause, an officer is required to conduct some due diligence.  *See Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995).  But an investigative stop under *Terry* requires something less than probable cause.  *See United States v. Johnson*, 364 F.3d 1185, 1194 (10th Cir. 2004) (noting that, for the purposes of determining reasonable suspicion, the "likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard").

such ambiguity is "the central purpose of an investigative detention." *See United States v. Cortez-Galaviz*, 495 F.3d 1203, 1206 (10th Cir. 2007); *see also Illinois v. Wardlow*, 528 U.S. 119, 125 (2000) (noting that *"Terry* recognized that the officers could detain [] individuals to resolve [] ambiguity" surrounding the lawfulness of the conduct).  Thus, whether the signs near David had the exact same words as the signs near William is not a determinative factor in the reasonable suspicion analysis.  Rather, it is but one factor in the totality of the circumstances.  As a result, this objection is overruled.

### 3.  Significance of the Signs

Plaintiffs' third objection is that signs stating private property or no trespassing do not, by themselves, provide reasonable suspicion.  *See* Docket No. 42 at 6-9.  The Court first addresses whether there was reasonable suspicion before addressing plaintiffs' objection.

The relevant municipal code states that "[n]o person shall . . . [e]nter or remain upon land or premises other than a dwelling of another in defiance of a legal request or order by the owner or some other authorized person."  *See* Boulder Rev. Code § 5-4-3(a).  The undisputed facts are as follows: Officer Bliley saw plaintiffs panhandling on two separate medians near Walnut and 28th Street; plaintiffs were close to several signs indicating that the property was private; one of the signs next to William specifically stated that no trespassing, solicitation, and loitering was allowed; plaintiffs directed defendants to the private property signs; and plaintiffs repeatedly stated that they were allowed to panhandle because the medians were private.  The Court finds that the totality of the circumstances – the presence of private property signs, plaintiffs'

panhandling, and a sign next to William stating no trespassing – "supported a suspicion that [plaintiffs] did not have permission" to be on the medians and thus were violating Boulder's trespass ordinance.  *See Manriquez*, 811 F. App'x at 486.

*Manriquez* is instructive.  There, the plaintiff was stopped for trespassing in a private garage of a residential building.  *See id.* at 483-84.  The garage had signs indicating no trespassing allowed and the plaintiff's license plate was not registered to the residential address of the building.  *Id.*  The plaintiff stated that the reason he was in the parking lot was that he was waiting for a friend.  *Id.*  The Tenth Circuit concluded that the officers had reasonable suspicion to stop the plaintiff.  The combination of the posted signs, the hour of the stop, the high crime area, and the lack of plaintiff's plates being registered to the residential building was sufficient for reasonable suspicion.  *Id.* at 486-87.  While any one of these facts on its own might not have been sufficient, it was the combination that provided the officers with reasonable suspicion.  *Id.*  The plaintiff's explanation that he was visiting a friend was insufficient to alter the calculus because it was "one fact among the others that comprises the totality of the circumstances."  *Id.* at 487.

Like *Manriquez*, it is the combination of the various factors that supports reasonable suspicion.  While the presence of a sign indicating private property or no solicitation may be insufficient on its own, the signs are not viewed in isolation; the facts must be viewed in totality.  Plaintiffs were panhandling near signs that stated that the property was private and near a sign that said solicitation and trespassing was not

13

allowed.⁴  This is sufficient for an officer to have reasonable suspicion that plaintiffs were violating Boulder's panhandling ordinance.

Plaintiffs' objection is that the existence of a private property sign and their "mere" presence near such sign is insufficient to demonstrate reasonable suspicion.  In making this argument, plaintiffs cite to variety of out of state decisions regarding trespass and no trespassing signs.  *See* Docket No. 42 at 7-9.  However, these cases are not binding on the Court.  More importantly, plaintiffs were not merely standing on private property, as those cases discuss.  Rather, plaintiffs were panhandling, not simply standing, in direct view of signs directing them not to and near signs stating private property.

### 4. Implied Consent

Finally, plaintiffs object that they had implied consent to be on the property.  *See id.* at 9-11.  The Court is unpersuaded.  Plaintiffs rely on a state statute to support that they in fact had implied consent to be on the private medians.  *See* Docket No. 42 at 9 (citing Colo. Rev. Stat. § 18-4-201).  But plaintiffs do not explain, and provide no support, for why the state's criminal trespass statute has any bearing on Boulder's civil trespass statute.

---

⁴ The specific sign near David did not state "no trespassing."  However, William and David were panhandling together, and a reasonable officer could conclude that the no trespassing sign applied to both medians because the medians and the private property signs were in close proximity to each other and could reasonably apply to each median.  It is irrelevant to the reasonable suspicion analysis that one sign may not, in fact, apply to both medians.  And, assuming that it was not reasonable to believe that the no trespassing sign also applied to David's median, there is no clearly established law saying that an officer does not have reasonable suspicion for an investigative stop when the property is private and the detainee is found panhandling on that property.

**IV.  CONCLUSION**

Defendants moved for summary judgment arguing that they have qualified immunity because (1) defendants had reasonable suspicion to stop plaintiffs or (2) even if they did not, there is no clearly established law stating that defendants did not have reasonable suspicion.  *See generally* Docket Nos. 33, 40.  The magistrate judge agreed, concluding that Officer Bliley had reasonable suspicion that plaintiffs were violating Boulder's trespass ordinance.  *See* Docket No. 41 at 18.  As discussed above, the Court agrees with the magistrate judge and finds that defendants had reasonable suspicion that plaintiffs were violating Boulder's trespass ordinance.  Because they had reasonable suspicion, there is no constitutional violation under the first prong of the qualified immunity test, and defendants are entitled to qualified immunity.  Accordingly, summary judgment should enter in favor of defendants.  It is therefore

**ORDERED** that plaintiffs' Objection to Magistrate Judge's Recommendation [Docket No. 42] is **OVERRULED**.  It is further

**ORDERED** that Recommendation of United States Magistrate Judge [Docket No. 41] is **ACCEPTED**.  It is further

**ORDERED** that Defendants' Motion for Summary Judgment [Docket No. 33] is **GRANTED**.  It is further

**ORDERED** that judgment shall enter for defendants and against plaintiffs on all claims.  It is further

**ORDERED** that this case is closed.


DATED March 31, 2021.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge